**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODDERICK PEREZ GONZALEZ** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-3217** |
| | : | |
| **DETECTIVE RYAN KELLY, RYAN MORSE, CORY CLIFFORD, KURT E. MONTZ, CORPORAL DUTCH, CORPORAL WEBER, DETECTIVE ZIMMERMAN, DETECTIVE MILLER, DETECTIVE DAMINGER, DETECTIVE KLINE** | : | |

# MEMORANDUM

**KEARNEY, J.** **October 29, 2026**

An incarcerated man sued several law enforcement officers alleging they violated his constitutional rights when arresting him on drug trafficking charges. He then decided to plead guilty to those charges. He now cannot continue seeking recovery on his civil rights claims challenging his arrest after pleading guilty unless a court vacates his conviction. We dismiss the incarcerated man's complaint.

## I. Alleged pro se facts

The Department of Homeland Security intercepted a package filled with five kilograms of cocaine on October 1, 2024 shipped to a person identified as "Sr. Perez" at 823 Blunston Street, Columbia, in Lancaster County.[1] Homeland Security agents suspected "Sr. Perez" to be Rodderick Perez Gonzalez.[2]

Homeland Security Special Agent Cory Clifford worked with Lancaster County Detective Ryan Kelly to set up a controlled delivery during which they would replace the package containing cocaine and instead deliver a package filled with baking soda.[3] Detective Kelly briefed his

colleagues, Sergeant Montz, Corporal Dutch, Corporal Weber, Detective Zimmerman, Detective Miller, Detective Daminger, and Detective Kline at the Lancaster County Drug Task Force office.[4] Law enforcement collectively planned for Detective Daminger to wear a FedEx shirt and deliver the package filled with baking soda.[5]

***Agents replace the package for a controlled delivery.***

The participants in the controlled delivery arrived at 823 Blunston Street in the evening on October 4, 2024.[6] Detective Daminger wearing the FedEx uniform delivered the package to the front porch.[7] Homeowner Roxana Madera Padilla exited the front door of the house, noticed the package, looked around the street, and went back inside without touching the package.[8] Mr. Perez Gonzalez and Ms. Padilla left the house and got into Mr. Perez Gonzalez's car without touching the package.[9] Ms. Padilla told Mr. Perez Gonzalez about the package while in the car.[10] Mr. Perez Gonzalez did not expect a package and did not know what the package contained.[11] He told Ms. Padilla to not open the package.[12] He told her he would call the Post Office to report an unknown package.[13] Mr. Perez Gonzalez alleges Detective Kelly said he later saw Mr. Perez Gonzalez reappear through the front door of the house, lean out, and reach to pick up the package and pull it inside.[14] Mr. Perez Gonzalez disagrees claiming he never touched the package and it remained on the porch unopened.[15]

***Officers enter the house and arrest Mr. Perez Gonzalez.***

The officers forced entry into the house after Mr. Perez Gonzalez returned.[16] The officers used a ram to enter through the front door.[17] Detective Miller handcuffed Mr. Perez Gonzalez.[18] Detective Kelly looked around the residence and into the windows of Mr. Perez Gonzalez's car.[19] Detective Kelly saw a cellphone, Walmart tote bags, a large bag, and three folded and collapsed United States Postal Service boxes.[20] Detective Kelly asked Corporal Weber for an assisting

detective to take custody of Mr. Perez Gonzalez's car and transport it back to the office to await a search warrant from Assistant District Attorney Benjamin Baker.[21]

The officers took Mr. Perez Gonzalez into custody.[22]

***Ms. Padilla reports a second package with cocaine three days later.***

An unpleaded person sent another package to the same property three days later.[23] Ms. Padilla reported the package to the police.[24] The second package contained two kilograms of cocaine.[25] Detective Kelly drafted search warrants for Mr. Perez Gonzalez's car the same day Ms. Padilla reported the package and Attorney Baker approved the warrants.[26] The officers searched the car and found a cell phone, receipts, identification cards, money orders, a UPS receipt stapled to a sticker, thirty-two clear plastic bags containing 888 grams of cocaine, 1,137 grams of marijuana, a black SanDisk USB drive, and $716.[27]

Attorney Baker approved adding charges against Mr. Perez Gonzalez based on the evidence found in the car and the second package.[28] Attorney Baker changed the original charge from attempted possession with intent to deliver to possession with intent to deliver cocaine and possession with intent to deliver marijuana.[29] The Commonwealth presently detains Mr. Perez Gonzalez in the Lancaster County Prison.[30]

***Mr. Perez Gonzalez pleaded guilty.***

Mr. Perez Gonzalez filed his Complaint with us on May 11, 2026.[31] Mr. Perez Gonzalez alleged Agent Morse, Special Agent Clifford, Detective Kelly, Sergeant Montz, Corporal Dutch, Corporal Weber, Detective Zimmerman, Detective Miller, Detective Daminger, and Detective Kline violated his Fourth and Fourteenth Amendment rights.[32] We granted Mr. Perez Gonzalez

leave to proceed without paying the filing fees on his Complaint but dismissed Agent Morse and Special Agent Clifford because of our mandated screening by Congress.[33]

But then Mr. Perez Gonzalez pleaded guilty to criminal attempt to manufacture, delivery, or possess with intent to manufacturer or deliver a controlled substance and for use or possession of drug paraphilia on August 4, 2026.[34] The Marshal Service effected service on the narrowed Complaint on August 18, 2026.[35]

## II. Analysis

Detective Kelly, Sergeant Montz, Corporal Dutch, Corporal Weber, Detective Zimmerman, Detective Miller, Detective Daminger, and Detective Kline move to dismiss Mr. Perez Gonzalez's remaining claims.[36] They argue Mr. Perez Gonzalez's August 4, 2026 guilty plea bars his civil rights claims under the Supreme Court's 1994 guidance in *Heck v. Humphrey*.[37] They also argue they are entitled to qualified immunity.[38] Mr. Perez Gonzalez did not oppose their motion. We agree the Supreme Court's guidance in *Heck* requires we dismiss Mr. Perez Gonzalez's claims against Detective Kelly, Sergeant Montz, Corporal Dutch, Corporal Weber, Detective Zimmerman, Detective Miller, Detective Daminger, and Detective Kline.

Mr. Perez Gonzalez's claims are not cognizable in this civil rights action. We follow the Supreme Court's 1994 guidance in *Heck v. Humphrey*: "In order to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[39] Our Court of Appeals instructs a guilty plea bars a section 1983 claim.[40]

Our colleagues Judge Baylson and Judge Schmehl applied the Supreme Court's guidance in *Heck* in instances where an incarcerated man pleaded guilty in related criminal proceedings.[41] Both of our colleagues found civil rights claims are not the proper vehicle to challenge a guilty plea.[42] Only when a Pennsylvania appellate court overturns his conviction or a federal court vacates his conviction on a habeas petition can Mr. Perez Gonzalez bring his civil rights claim.[43]

Mr. Perez Gonzalez cannot bring a section 1983 claim after he pleaded guilty. We recognize Mr. Perez Gonzalez filed his Complaint here before he pleaded guilty.[44] But we cannot today find his conviction invalid and allow him to proceed with a claim under section 1983.

We dismiss Mr. Perez Gonzalez's claims and close the case without prejudice granting Mr. Perez Gonzalez leave to seek relief under the civil rights law if a court vacates his guilty plea.

## III. Conclusion

We dismiss Mr. Perez Gonzalez's claims without prejudice to pursue civil rights remedies only after a court vacates his conviction based on his guilty plea.

---

[1] ECF 3 ¶¶ 1, 5.

[2] *Id.* ¶ 5.

[3] *Id.* ¶¶ 2, 7.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 7.

[6] *Id.* ¶¶ 6, 8.

[7] *Id.* ¶ 8.

[8] *Id.* ¶ 9.

[9] *Id.* ¶ 10.

[10] *Id.* ¶ 11.

[11] *Id.* ¶ 11.

[12] *Id.* ¶ 13.

[13] *Id.*

[14] *Id.* ¶ 12.

[15] *Id.* ¶ 13.

[16] *Id.* ¶ 14.

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶ 15.

[20] *Id.*

[21] *Id.* ¶¶ 15–16.

[22] *Id.* ¶ 16.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* ¶ 19.

[27] *Id.* ¶¶ 17–18.

[28] *Id.* ¶ 20.

[29] *Id.*

[30] *Commonwealth v. Gonzalez Perez*, No. CP-36-CR-4906-2024, Lancaster Cnty. Ct. Com. Pl. This state court docket lists Mr. Perez Gonzalez's name as "Roderick Gonzalez Perez." *See id.* We today use the name Mr. Perez Gonzalez provided in his Complaint: "Rodderick Perez Gonzalez." *See* ECF 3.

[31] ECF 3.

[32] *Id.* at 2–3, 7.

[33] ECF 10 at 1; 28 U.S.C. § 1915(e)(2)(B).

[34] *Commonwealth v. Gonzalez Perez*, No. CP-36-CR-4906-2024 (Lancaster Cnty. Ct. Com. Pl. Aug. 4, 2026) (guilty plea); *id.* (guilty plea colloquy); *id.* (public access).

[35] ECF 14.

[36] ECF 17.

[37] ECF 17-1 at 7–9; *Heck v. Humphrey*, 512 U.S. 477, 484–486 (1994). An incarcerated man in *Heck* sued prosecutors and police officers under section 1983 for malicious prosecution challenging his conviction for manslaughter. *Id*. at 478–79. The Supreme Court upheld the Court of Appeals for the Seventh Circuit holding a convicted person cannot sustain a claim under section 1983 unless the conviction or sentence has been reversed on direct appeal, expunged, declared invalid, or otherwise called into question by a grant of a writ of habeas corpus. *Id.* The Supreme Court in *Heck* explained section 1983 is not the appropriate vehicle to challenge the validity of a criminal conviction. *Id.*

[38] ECF 17-1 at 9–10. We do not address the issue of qualified immunity today.

[39] *Heck*, 512 U.S. at 486–87.

[40] *Harris v. Stash*, No. 22-1910, 2023 WL 1990531, at *2 (3d Cir. Feb. 14, 2023) (*per curiam*), *cert. denied*, 144 S. Ct. 579 (2024); *Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005); *see O'Keefe v. Lehigh Univ.*, No. 19-0884, 2023 WL 137457, at *6 (E.D. Pa. Jan. 9, 2023) (Our Court of Appeals determined a guilty plea is sufficient to bar a subsequent section 1983 claim under *Heck*) (citing *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 640 (E.D. Pa. 2014), *aff'd*, No. 23-1235, 2024 WL 138578 (3d Cir. Jan. 12, 2024)).

[41] In *Woolford v. Bartol*, No. 22-3757, 2022 WL 11804035, at *1, 3 (E.D. Pa. Oct. 20, 2022), Judge Baylson dismissed claims by an incarcerated man who pleaded guilty before suing individual assistant district attorneys and police officers as well as City entities under section 1983 alleging false arrest and false imprisonment. In *Strunk v. Chester Cnty.*, No. 13-824, 2015 WL 865477, at *4 (E.D. Pa. Mar. 2, 2015), *aff'd as modified sub nom. Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221 (3d Cir. 2016), Judge Schmehl dismissed claims from several pro se incarcerated persons suing detectives, police officers, and the township under section 1983 who already pleaded guilty to the underlying charges for possession of child pornography. *Id.* at *4–5.

[42] *Woolford*, 2022 WL 11804035, at *1, 3; *Strunk*, 2015 WL 865477, at *4.

[43] *See McDonough v. Smith*, 588 U.S. 109, 117–18 (2019).

[44] ECF 3.